S. AMANDA MARSHALL, OSB #095347
United States Attorney
District of Oregon
ADRIAN L. BROWN, OSB #050206
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97201-2902
Telephone:  (503) 727-1003
Fax:  (503) 727-1117
adrian.brown@usdoj.gov

BRETT E. ECKELBERG
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA  98104-7075
Telephone:  (206) 615-3748
Fax:  (206) 615-2531
brett.eckelberg@ssa.gov

    Of Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| IGOR ZAVALIN,<br><br>      Plaintiff,<br><br>      vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>      Defendant. | Civil No. 3:12-CV-00114-MO<br><br><br><br>DEFENDANT'S BRIEF |

## INTRODUCTION

Plaintiff, Igor Zavalin, brings the present action challenging Defendant Commissioner of

Social Security's (Commissioner) final determination that Plaintiff is "not disabled" and,

therefore, not entitled to Supplemental Security Income (SSI) disability benefits under Title XVI

of the Social Security Act (Act).  42 U.S.C. §§ 405(g), 1381-83f (2012).  Plaintiff asks the Court

to reverse the Commissioner's decision and remand for further administrative proceedings.

Plaintiff's Brief (Pl.'s Br.) at 14.

Because the Commissioner's decision denying benefits was supported by substantial

evidence and applied the correct legal standards, the Commissioner asks the Court to affirm the

Agency's decision and dismiss this case.

## STATEMENT OF THE CASE

Starting in 2004, Plaintiff received SSI disability benefits as a child based on cerebral

palsy.  Tr. 27.  As required by law, after Plaintiff attained age 18, his eligibility for SSI benefits

was redetermined under the rules for determining disability in adults.  20 C.F.R. § 416.987

(2012).  On February 23, 2009, it was determined Plaintiff was no longer disabled as of February

1, 2009.  Tr. 28, 30-32, 33-36.  This determination was upheld upon reconsideration by a State

Agency Disability Hearing Officer.  Tr. 29, 41-64; *see also* Tr. 37-40 (Plaintiff's "Request for

Reconsideration").  Plaintiff then requested a hearing before an administrative law judge (ALJ).

Tr. 65-66.  An ALJ held a hearing on September 17, 2010, at which Plaintiff, represented by an

attorney, appeared and testified with the assistance of a Russian interpreter.  Tr. 489-528.  The

ALJ also heard testimony from an impartial vocational expert (VE), Gary R. Jesky, and from

Plaintiff's high school transition specialist, Carolyn Merrill.  Tr. 510-28.  On October 28, 2010,

the ALJ determined Plaintiff was not disabled within the meaning of the Act.  Tr. 13-26.  On

November 17, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the Commissioner's final decision.  Tr. 6-9; 20 C.F.R. §§ 416.1481, 422.210; *see also*

*Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 n.1 (9th Cir. 2004). This appeal followed.

## STANDARD OF REVIEW

The Commissioner's final decision to deny benefits must be affirmed if it is supported by substantial evidence and is based on correct legal standards. 42 U.S.C. § 405(g); *Batson,* 359 F.3d at 1193; *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is a "highly deferential" standard of review, and means more than a mere scintilla, but less than a preponderance. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Further, the Commissioner's findings must be upheld if they are supported by inferences reasonably drawn from record evidence. *Tommasetti*, 533 F.3d at 1038; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). This Court may not substitute its judgment for that of the ALJ if the evidence "reasonably supports either confirming or reversing the ALJ's decision." *Batson*, 359 F.3d at 1196. If the evidence could result in "more than one rational interpretation, it is the ALJ's conclusion that must be upheld. . . . A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citations omitted). Harmless errors do not change the outcome of a case and do not warrant reversal of the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Plaintiff has the burden to prove any error is harmful. *McLeod v. Astrue*, 634 F.3d 516, 522 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009)). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how

egregious the ALJ's errors may be." *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## STATEMENT OF FACTS

Plaintiff was born in Russia on December 26, 1990, and is classified as a younger person. Tr. 24; *see* 20 C.F.R. § 416.963(a). Plaintiff was diagnosed with cerebral palsy while living in Russia in 2002. Tr. 20 (ALJ citing "Ex. 13F" at 375-83). In 2004, Plaintiff and his family moved to the United States, and that same year, Plaintiff began receiving SSI disability benefits as a child. Tr. 20. Plaintiff graduated from high school in 2010, having earned a grade point average of 3.55 while enrolled in both special education and mainstream classes with accommodations. Tr. 21 (ALJ citing "Exhibit 18E" at Tr. 282-99). Plaintiff was 20 years old on the date of the ALJ's decision. Tr. 26. The Commissioner adopts the ALJ's summary of the medical and testimonial evidence, and discusses the relevant facts in connection with the arguments below. Tr. 13-26.

## DISABILITY EVALUATION IN A REDETERMINATION CASE

### I.      Burden of Proof

The burden is on the claimant to prove he is disabled within the meaning of the Act. *Valentine*, 574 F.3d at 689. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

other substantial gainful activity existing in the national economy.  42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

## II.    Sequential Evaluation Process in a Redetermination Case

Under 20 C.F.R. § 416.987(b), a claimant who was eligible for SSI disability benefits as a child, and who remained eligible for SSI the month before the month in which he turned 18 years of age, must have his eligibility redetermined under the adult standards in 20 C.F.R. § 416.920 (c) through (g).  20 C.F.R. § 416.987(b).  The ALJ may find the claimant not disabled as an adult even though the claimant was previously found disabled as a child.  *See* 20 C.F.R. § 416.987(a)(2).

In redetermining a claimant's eligibility for disability benefits after age 18, the ALJ applies a modified version of the five-step sequential evaluation process used for adult claims.  20 C.F.R. § 416.987.  *See also* 20 C.F.R. § 416.920 (outlining general process for evaluating adult disability).  Specifically, in a redetermination case, the ALJ does not consider the first step of the general five-step sequential evaluation process, that is, whether a claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 416.987(b).  The claimant still bears the burden of proof at steps two through four and the burden of persuasion throughout the entire process.  20 C.F.R. § 416.960(c)(2); *see, e.g., Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1999) as amended (stating that at all times the claimant has the burden of establishing his entitlement to disability insurance benefits); *Tackett*, 180 F.3d at 1098-99.  At step five, the burden of production shifts to the Commissioner to identify jobs existing in significant numbers in the national economy that the claimant can perform given his residual functional capacity, age, education, and work experience.  *Tackett*, 180 F.3d at 1098-99.  *See also* 20 C.F.R. § 404.1560(c)(2).  The Commissioner can meet this burden "(a) by the testimony of a vocational

expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett*, 180 F.3d at 1099.

## III.   The ALJ's Findings

The ALJ properly applied the modified version of the five-step sequential evaluation process in finding Plaintiff's disability ended on February 1, 2009, and Plaintiff had not become disabled since that date.  Tr. 16-18, 26.  *See* 20 C.F.R. § 416.920.

At step two, the ALJ found that since February 1, 2009, Plaintiff had the following severe impairments: cerebral palsy or a similar disorder, right knee fracture and atrophy of the right leg, and a learning difficulty or disorder.  Tr. 17, 18.  *See* 20 C.F.R. §§ 416.920(c), 416.987(b).  At step three, the ALJ found Plaintiff had not had an impairment or a combination of impairments that met or equaled the criteria of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, since February 1, 2009.  Tr. 18.  *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

After considering Plaintiff's subjective complaints, the objective medical findings, and the opinion evidence regarding the effects of his symptoms, the ALJ concluded Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), with additional limitations as follows:

> [Plaintiff] is able to perform occasional pushing and pulling with his upper extremities.  He can occasionally do overhead reaching, fine manipulation, and gross manipulation with his right, non-dominant upper extremity.  He can perform frequent overhead reaching, gross manipulation, and fine manipulation with his left, dominant upper extremity.  [Plaintiff] can occasionally balance.  Use of a cane is advisable when walking over rough or steeply sloped terrain.  He cannot climb ladders, ropes, or scaffolds.  [Plaintiff] speaks in a halting, but effective way.  He can perform simple, routine tasks.

Tr. 19.

At step four, the ALJ found Plaintiff had no past relevant work, as defined in 20 C.F.R. § 416.965.  Tr. 25.  At step five, the ALJ found that, based on Plaintiff's RFC,

age, education, and work experience, Plaintiff could perform work existing in significant

numbers in the national economy in representative occupations such as cashier and

surveillance-system monitor.  Tr. 25.  Accordingly, the ALJ found Plaintiff was not

disabled.  Tr. 26.

## ISSUES

The overarching issue on appeal is whether the Commissioner's decision is supported by

substantial evidence and based on the correct legal standards.  *Tommasetti*, 533 F.3d at 1038.

Within this context, Plaintiff raises three specific issues:

(1) Did the ALJ properly weigh and incorporate into the RFC finding the opinions of

non-examining State agency medical consultants, Robert Henry, Ph.D., and J. Scott

Pritchard, D.O.?  Pl.'s Br. at 5-7.

(2) Did the ALJ properly reject the testimony of Plaintiff's high school transition

specialist, Caroline Merrill?  Pl.'s Br. at 7-11.

(3) Did the ALJ properly rely on the VE's testimony to find Plaintiff was capable of

performing jobs with a reasoning level of three in the *Dictionary of Occupational

Titles* (*DOT*) given his RFC and vocational background?  Pl.'s Br. at 11-14.

## ARGUMENT

## I.    The ALJ Properly Evaluated the State Agency Medical Consultants' Opinions and Included Those Opinions in the RFC Determination.

Plaintiff contends the ALJ improperly evaluated the opinions of non-examining State

agency medical consultants, Dr. Henry and Dr. Pritchard, by failing to weight their opinions and

by rejecting without explanation certain limitations they assessed.  Pl.'s Br. at 5-7; Tr. 320-27,

333-50.  As an initial matter, Plaintiff's first assertion is unfounded because the ALJ did, in fact,

specify the weight given to the consultants' opinions.  In the paragraph immediately preceding the summary of Dr. Henry's and Dr. Pritchard's opinions, the ALJ stated that, "[a]lthough those [DDS] physicians were non-examining, their opinions do deserve *some weight* because of their expertise and because they have reviewed most of the medical evidence."  Tr. 23 (emphasis added).  Thus, contrary to Plaintiff's assertion, the ALJ specifically gave "some" weight to the consultants' opinions.

Plaintiff's second argument also fails because the ALJ appropriately included all of the consultants' assessed imitations that were neither conclusory nor inconsistent with the other evidence of record.  Although an ALJ may not ignore a medical consultant's opinion and must explain the weight given to such an opinion, she is also not bound by the consultant's conclusions.  *See* Social Security Ruling (SSR) 96-6p, *available at* 1996 WL 374180, at *2 ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").  "[B]ecause nonexamining sources have no examining or treating relationship with [a claimant], the weight [the ALJ] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions."  20 C.F.R. § 416.927(c)(3).  The ALJ also will consider the extent to which the consultants' opinions "consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources."  *Id.*

Regarding Dr. Henry's opinion, Plaintiff faults the ALJ for not incorporating into his RFC Dr. Henry's opined limitation that Plaintiff "due to communication difficulties, should not work with the general public."  Pl.'s Br. at 6 (quoting Tr. 349).  To be clear, the ALJ considered this assessed limitation, but ultimately did not adopt it, finding instead, based on substantial

evidence, that Plaintiff could communicate in an effective, albeit halting, manner.  Tr. 19, 22-23.

Indeed, the ALJ justifiably did not include this limitation in Plaintiff's RFC because it was

inconsistent with the record as a whole.  The opinions of non-examining medical consultants

must be "consistent with independent clinical findings or other evidence in the record" to

constitute substantial evidence.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  *See* 20

C.F.R. § 404.1527(c)(4) (stating that, generally, the more consistent an opinion is with the record

as a whole, the more weight it will receive).

　　　　Although Dr. Henry provided this opinion in the narrative section of the Mental RFC

Assessment form—as opposed to the check-box section—the evidence he reviewed did not

support such an extreme limitation.  *Compare* Tr. 345 *with* Tr. 349.  For instance, Dr. Henry

reached his conclusions despite reviewing reports from Plaintiff's school counselor that he did

well in automotive classes "despite his deficits in English," and "enjoyed working on site" with

other students who were building a house.  Tr. 345.  In addition, Dr. Henry noted the finding of

Tatsuro Ogisu, M.D., the one that the ALJ adopted, that "[o]verall, [Plaintiff's] two-way

communication is effective," although "somewhat delayed by a halting speech pattern."

*Compare* Tr. 19, 22–23, 345 *with* Tr. 393, 395.  Because this limitation was neither consistent

with nor supported by other evidence in record, the ALJ properly rejected the limitation.  Tr. 23-

24.  *See Thomas*, 278 F.3d at 957.

　　　　Surprisingly, Plaintiff still claims that by excluding this one limitation opined by Dr.

Henry, the ALJ "essentially ignored the portions of the opinion that did not support a finding of

non-disability."  Pl.'s Br. at 6.  Plaintiff fails, however, to show in any way how adding this

limitation to his RFC would render him incapable of work.  *See Valentine*, 574 F.3d at 691-92.

Ultimately, substantial evidence in the record shows Plaintiff is quite capable of communicating

with the general public.  As the ALJ pointed out, Plaintiff immigrated to the United States from Russia and evidence in the record showed his communication skills were improving over time as he "bec[a]me more proficient in the English language."  Tr. 21 (ALJ citing and summarizing "Exhibit 13F" at Tr. 375-83).  Indeed, the ALJ noted the opinion of examining physician, Dr. Ogisu, that Plaintiff's learning impairment was "magnified by his need to learn a second language."  Tr. 23 (ALJ citing "Exhibit 15F" at Tr. 395).  Further, examining psychologist, James B. Powell, Psy.D., reported that although Plaintiff "had a tendency to be friendly, quiet and shy, [] he did enjoy interaction with peers, especially during P.E. class."  Tr. 376.   The record also showed Plaintiff's activities included participation in sports such as "volleyball, football, soccer and some basketball."  Tr. 377; 504.  As such, Plaintiff has failed to show the ALJ erred in not providing for a limitation that restricts Plaintiff's interaction with the general public in formulating the RFC.

Regarding Dr. Pritchard's opinion, Plaintiff contends the ALJ was required to develop an RFC that incorporated all of the limitations checked-off by Dr. Pritchard in the Physical RFC assessment form.  Pl.'s Br. at 7; Tr. 320-27.  Specifically, Plaintiff claims the ALJ failed to explain why the following check-box limitations opined by the consultant were not incorporated into the RFC finding: occasional use of right hand controls; frequent stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; and avoiding concentrated exposure to workplace hazards.  Pl.'s Br. at 7; *see* Tr. 23 (ALJ citing "Exhibit 2F" at Tr. 320-27).  However, in making his RFC determination, the ALJ need only account for limitations supported by the record and which do not depend on Plaintiff's subjective complaints.  *See, e.g., Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  Indeed, an ALJ need not discuss all evidence presented to him.  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Here, the ALJ

adequately considered the evidence, and analysis of each of Dr. Pritchard's check-box indications should not be required.

To be clear, however, Plaintiff incorrectly faults the ALJ for not including a separate limitation for "occasional use of right hand controls" in his RFC, because this limitation is subsumed in the general push and/or pull exertional limitation category on the Physical RFC Assessment form Dr. Pritchard completed.  Tr. 321; Pl.'s Br. at 7.  By limiting Plaintiff to occasional pushing and pulling with his upper extremities, the ALJ accounted for his use of right hand controls at the level assessed by Dr. Pritchard.  Tr. 19, 321 (*see* "5.  Push and/or pull (*including* operation of hand and/or foot controls)" (emphasis added)).  As for limitations involving stooping, crouching, crawling, and climbing ramps and stairs, it is reasonable to infer the ALJ did not build these into his RFC determination given the substantial evidence he noted regarding Plaintiff's ability to play sports, including his testimony he participates in football, volleyball, basketball, soccer, and riding a bicycle.  Tr. 22, 393, 504-05.  As the ALJ stated, these activities "show the claimant is capable of performing at least light exertion work and simple, repetitive tasks."  Tr. 22.  The Court may draw inferences logically flowing from the evidence if they are there to be drawn.  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  Finally, Plaintiff's desire for the ALJ to restrict Plaintiff from concentrated exposure to workplace hazards is immaterial, since Plaintiff presents no evidence that this circumstance is implicated in neither the cashier nor systems-surveillance monitor jobs the ALJ identified as representative occupations.  Tr. 25.

Ultimately, the ALJ incorporated into Plaintiff's RFC much of Dr. Pritchard's assessment, including his conclusion that Plaintiff could perform light work .  Tr. 19, 23, 327. As a result, the ALJ properly concentrated on Dr. Pritchard's narrative conclusions in the form in

evaluating which assessed limitations should be included in Plaintiff's RFC.  Tr. 23.  For the foregoing reasons, the ALJ properly considered and weighed the medical opinions offered by the State agency medical consultants.  Moreover, because the ALJ's residual functional capacity determination was based on substantial evidence and the record as a whole, it should be upheld. *Richardson*, 402 U.S. at 401.

## II.    The ALJ Properly Rejected Testimony by Plaintiff's High School Transition Specialist, Ms. Merrill.

Educational personnel, such as high school transition specialists, are not "acceptable medical sources."  *Compare* 20 C.F.R. § 416.913(a) *with* 20 C.F.R. § 416.913(d).  They are considered "other sources" and the ALJ must consider their opinions concerning a claimant's ability to work and the severity of a claimant's impairment.  20 C.F.R. § 416.913(d)(2); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).  *See also* SSR 06-03p, *available at* 2006 WL 2329939 (discussing treatment of "other source" opinion evidence).  Nevertheless, the ALJ may discount opinions from "other sources" for reasons germane to each source.  *Molina*, 674 F.3d at 1111.  Indeed, one germane reason is sufficient to discredit statements from other sources. *Valentine*, 574 F.3d at 694.

Plaintiff argues the ALJ improperly rejected the testimony given by his high school transition specialist, Ms. Merrill, who opined that Plaintiff's speed, exertion levels, and cognitive difficulties precluded any "eight-hour job" and likely any "four-hour job."  Pl.'s Br. at 7-11; Tr. 510-21.  Although the ALJ made clear that the RFC finding accounted for Ms. Merrill's testimony, Plaintiff still contests the ALJ's refusal to accept the portion of Ms. Merrill's testimony "indicati[ng] that claimant is totally disabled," what Plaintiff refers to as the "relevant portions" of the testimony.  Tr. 21; *see* Pl.'s Br. at 10-11.  This argument, however, ignores the

fact that the decision about Plaintiff's RFC and his ability to work is reserved exclusively to the Commissioner, and thus the ALJ.  SSR 96-5p, *available at* 1996 WL 374183, at *2; *McLeod*, 640 F.3d at 885 ("The law reserves the disability determination to the Commissioner."). Ultimately, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

Regardless, Plaintiff's argument fails, most importantly, because the ALJ rejected the portion of Ms. Merrill's testimony indicating Plaintiff was "totally disabled" for two germane reasons.  First, the ALJ found that portion of Ms. Merrill's testimony inconsistent with "the record as a whole."  Tr. 21.  Inconsistency with either a claimant's activities or the medical evidence is a specific, germane, and sufficient reason for rejecting lay testimony.  *Bayliss*, 427 F.3d at 1218 (holding an ALJ may reject lay testimony if it is inconsistent with the claimant's activities or the objective evidence in the record).  *See also* SSR 06-03p (stating ALJ may assess the consistency between a source's opinion and the other evidence in evaluating "other source" opinions).  In her summary of the record, the ALJ described Plaintiff's daily activities and identified medical evidence that contradicted Ms. Merrill's testimony.  For example, the ALJ noted Plaintiff's testimony that he "participates in physical activities such as football, volleyball, basketball, and riding a bicycle," and that he "uses a computer, surfs the internet, and plays videogames."  Tr. 22, 377, 504-07.  The decision also notes Plaintiff successfully completed his individualized high school program without the use of a tutor or the use of interpreters in class. Tr. 21.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (stating ALJ properly rejected lay witness testimony that the claimant appeared uncomfortable in

class and had trouble understanding, because the claimant successfully completed his continuous full-time coursework).  Given the numerous discrepancies between Plaintiff's daily activities and Ms. Merrill's opinion that Plaintiff's "slower pace," tendency to "tire[] really easily," and tendency to "forget things" rendered him unable to work, the ALJ properly rejected the lay testimony for a germane reason supported by substantial evidence.  Tr. 518.

The ALJ also identified significant objective medical evidence that was inconsistent with Ms. Merrill's testimony—a germane reason that, by itself, is sufficient to reject her testimony. Lay testimony must always be consistent with medical evidence and cannot establish limitations contradicted by the medical record.  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  Among other substantial medical evidence inconsistent with Ms. Merrill's testimony, the ALJ noted, for example, that 2009 x-rays of Plaintiff's right shoulder and hip were "negative for any abnormalities," and that Dr. Ogisu's examination notes state that Plaintiff's learning impairment was "magnified by his need to learn a second language."  Tr. 20 (ALJ citing "Exhibit 22F" at Tr. 455-56), 23 (ALJ discussing "Exhibit 15F" at Tr. 392-95).  Because no acceptable source opined that Plaintiff's impairments were so severe that they precluded employment, either full- or part-time, the aspects of Ms. Merrill's testimony that reflect this opinion were properly rejected as inconsistent with the medical evidence.  Therefore, the ALJ accepted the testimony of Ms. Merrill that was consistent with the record of Plaintiff's activities and the objective evidence in the record, and properly rejected the portions of her testimony that did not meet this standard.

Second, the ALJ provided another germane reason for rejecting Ms. Merrill's testimony—Ms. Merrill had "limited expertise" and "limited background in assessing persons with disability."  Tr. 21.  In determining the appropriate to weight to give an opinion from an "other source," Social Security Ruling 06-03p states the ALJ should consider several factors,

including but not limited to, the source's qualifications, area of specialty or expertise, and relationship with the claimant. Here, the ALJ properly followed the Agency's instructions in considering the fact that Ms. Merrill was "not a doctor or psychologist," did not have an "AA degree or BA degree," and had only been in her job as a "transition specialist for 4 years." Tr. 21. The ALJ also noted that Ms. Merrill met with Plaintiff only "during the last three months of his last school year." Tr. 21; *see* Tr. 520  As shown, Ms. Merrill's non-medical background, level of education, extent of experience, and limited relationship with Plaintiff did not provide a sufficient basis for the ALJ to confidently rely on her opinions relating to disability. Thus, the ALJ properly discredited Ms. Merrill's testimony for another germane reason.

In sum, the ALJ gave two germane reasons supported by substantial evidence in the record for rejecting the portion of Ms. Merrill's testimony that is reserved to the Commissioner—the ultimate determination of disability. Ms. Merrill's testimony indicating Plaintiff was totally disabled was, therefore, properly rejected.

## III.    The ALJ Properly Relied on VE Testimony to Find Plaintiff Capable of Performing Jobs with a Reasoning Level of Three Given His RFC and Vocational Background.

After formulating a proper RFC that accounted for Plaintiff's limitations, the ALJ presented these limitations to the VE in the form of hypothetical questions. Tr. 521-26. The first hypothetical proposed exertional limitations and a non-exertional communication limitation of occasional speech. Tr. 522. Realizing she did not present "the accurate limitation regarding communication," the ALJ revised the hypothetical to clarify the communication limitation as opined by the medical sources of record: "He is able to hear at normal conversational volume without difficulty. Communication is somewhat delayed by a halting speech pattern, but effective in the end." Tr. 522. In response, the VE testified that "as long as there wasn't too long

of a latency," that is, delay, in communication, someone with Plaintiff's limitations would be capable of performing unskilled jobs such as cashier and surveillance-system monitor. Tr. 523. *See* U.S. Dep't of Labor, *DOT* (4th ed. 1991) job descriptions for Cashier II (*DOT* #211.462-010), *available at* 1991 WL 671840; and Surveillance-system Monitor (*DOT* #379.367-010), *available at* 1991 WL 673244. The VE also testified his opinions were, and would continue to be, consistent with the *DOT*, or he would otherwise inform the ALJ. Tr. 521-22. Based on the VE's testimony, the ALJ then found that given Plaintiff's RFC and vocational profile (age, education, and work experience) Plaintiff was capable of performing the requirements of representative occupations such as cashier and surveillance-system monitor. Tr. 25. The ALJ concluded the step five evaluation by finding Plaintiff "not disabled." Tr. 25.

Plaintiff challenges the ALJ's step five findings, arguing that the VE's testimony (1) conflicted with the *DOT* and the ALJ's RFC assessment, and (2) was insufficient to carry the Commissioner's burden of proof at step five. Pl.'s Br. at 11-14. Plaintiff's arguments are without merit because no such conflict or insufficiency exists. The ALJ properly relied on the VE's testimony in finding Plaintiff capable of work given his RFC and background—a finding that is also supported by substantial evidence.

### A. The jobs identified by the VE are consistent with Plaintiff's RFC.

Plaintiff asserts the VE's testimony conflicts with information in the *DOT* because the identified jobs of cashier and surveillance-system monitor require a reasoning level of three, which Plaintiff claims is inconsistent with his RFC for "simple, routine tasks." Pl.'s Br. at 11. Plaintiff ultimately faults the ALJ for relying on this testimony without providing an "explanation for this inconsistency" with the *DOT*. Pl.'s Br. at 12. Contrary to Plaintiff's claim, the RFC limiting Plaintiff to "simple, routine tasks" does not conflict with the reasoning level

required to work as a cashier or surveillance-system monitor.  *See DOT*, App. C, § III, 1991 WL

688702 (discussing reasoning levels under "General Education Development (GED)).

Indeed, Plaintiff's argument mistakenly assumes the terms used in the *DOT* and the

Social Security regulations have the same meaning.  *See Meissl v. Barnhart,* 403 F.Supp.2d 981,

983 (C.D. Cal. 2005).  In *Meissl v. Barnhart*—the only published case on this issue in the Ninth

Circuit—the court explained that the Social Security Administration's regulations have two

categories for comprehension, memory, and concentration ability: "short and simple

instructions," and "detailed" or "complex" instructions.  *Meissl*, 403 F.Supp. 2d at 984 (quoting

20 C.F.R. § 416.969a(c)(1)(iii)).  Conversely, the *DOT* has six reasoning levels.  The reasoning

levels of one through three are as follows:

> 01 LEVEL REASONING DEVELOPMENT: Apply commonsense
> understanding to carry out simple one- or two-step instructions.
> Deal with standardized situations with occasional or no variables in
> or from these situations encountered on the job.

> 02 LEVEL REASONING DEVELOPMENT: Apply commonsense
> understanding to carry out detailed but uninvolved written or oral
> instructions.  Deal with problems involving a few concrete
> variables in or from standardized situations.

> 03 LEVEL REASONING DEVELOPMENT: Apply commonsense
> understanding to carry out instructions furnished in written, oral, or
> diagrammatic form.  Deal with problems involving several
> concrete variables in or from standardized situations.

*DOT*, at App. C.  The *Meissel* court concluded that the Social Security Administration and the

*DOT* do not use the words "simple" or "detailed" in the same way.  *Meissel*, 403 F.Supp. 2d at

984.  As a result, the mere use of the words "simple" and "routine" in an RFC does not

automatically create a conflict with jobs describing a reasoning level with the words

"commonsense understanding" and "standardized."

Because an ALJ need only explain "*an apparent unresolved conflict* between [the vocational expert] evidence and the [*DOT*]," SSR 00-4p, *available at* 2000 WL 1765299 (emphasis added), the ALJ properly determined she could rely upon the VE's testimony because the VE testified that no conflict existed between his opinion and the *DOT*–and no such conflict did exist.  Tr. 25, 521-22.

Regardless of whether a conflict exists between the RFC and the reasoning level three, the record evidence as a whole supports the finding that Plaintiff can perform the jobs of cashier and surveillance-system monitor.  Indeed, "[a]n ALJ may rely on expert testimony which contradicts the *DOT* [so long as] as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995).  Here, Plaintiff's daily activities of surfing the internet, playing videogames, and using a computer belie any claim he cannot perform job functions that involve the very same skill set.  Tr. 21, 22.  The surveillance-system monitor job, for example, involves observing television screens, pushing buttons, and adjusting monitor controls, activities shared with playing video games and using computers.  *See DOT* #379.367-010.  As Disability Determination Services psychologist Dave T. Scott, Ph.D.,[1] opined, Plaintiff's ability to operate video games and to engage in several sports suggests he may be capable of substantial gainful activity.  Tr. 353.

Although one job title is a sufficient basis on which to make a step five determination, substantial evidence in the record also shows that Plaintiff is capable of performing the

---

[1] Dr. Scott's specialty code of 38, printed at the bottom of his opinion, identifies his medical specialty as psychology.  Tr. 353.  *See* POMS DI 26510.090.D, *available at* http://policynet.ba.ssa.gov/poms.nsf/lnx/0426510090 (listing medical specialty codes for use by medical consultants on Social Security forms).

requirements of the cashier position.  The cashier job involves computing bills, receiving cash, making change, cashing checks, operating adding machines or cash registers with electronic data processing equipment, and pressing numeric keys of computers.  *See DOT* #211.462.010.  In Plaintiff's Individualized Education Program (IEP) record, his high school noted that despite being given a modified 9th grade math curriculum, Plaintiff  "scored a 100% on a [2010] assessment measuring his ability to graph a linear equation from slope intercept form (y = mx + b)."  Tr. 291.  *See also* Tr. 282 (high school transcript showing Plaintiff earning "A"s and "A-"s in his pre-algebra and math skills courses); 286 (IEP record stating "[m]ath is [Plaintiff]'s strength" and "he retains mathematical concepts quite well").[2]  Further, as the ALJ noted, Ms. Merrill testified that math was "one of [Plaintiff's] stronger skills" and she thought he could do math at a seventh grade level.  Tr. 518.  *See* Tr. 21.  As the record shows, Plaintiff's math ability, as well as his ability to operate computer systems, makes the cashier job an arguably ideal position for him.[3]  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001).  As such, the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence because there is at least one job in the national economy that Plaintiff has the ability to perform.

### B.  The VE's testimony provided substantial evidence to find Plaintiff not disabled.

Plaintiff also claims the ALJ improperly accepted VE testimony that was "not sufficient to carry the Commissioner's burden . . . of proving that [Plaintiff] is capable of performing jobs."

─────────────────────

[2] Although the ALJ did not specifically cite each of the preceding pieces of evidence, they are consistent with the ALJ's observation about Plaintiff's math skills.  Tr. 21.  It is not a post-hoc rationalization to point out "additional support for the Commissioner's and the ALJ's position."  *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006).  Rather, post-hoc rationalizations ask the Court to "invent a new ground of decision[.]"  *Id.*

Pl.'s Br. at 12.  Specifically, Plaintiff assigns error to the ALJ's step five finding because the VE did not explain the impact of "halting . . . but effective" speech on the jobs he identified, and the "ALJ accepted this VE testimony with no further clarification of the communication delay." Pl.'s Br. at 12-14.  Ironically, in faulting the ALJ for failing to clarify the VE's alleged "hesitant" and "shaky" testimony, Plaintiff fails to provide any legal support for his argument or explain why this constituted error.  Instead, Plaintiff merely states an incorrect burden of proof and a way in which the Commissioner can satisfy this alleged burden (*i.e.*, by eliciting testimony from a VE).  Pl.'s Br. at 12.

Indeed, Plaintiff incorrectly asserts that the "Commissioner *bears the burden of proving* that the claimant is capable of performing jobs that exist in significant numbers in the national economy."  Pl.'s Br. at 11, 12 (emphasis added).  The Commissioner, however, does not bear the burden of proof at step five.  Rather, the Commissioner carries only the limited burden of *production* at step five.  20 C.F.R. § 416.960(c)(2).  In 2003, the Commissioner clarified the rules on the sequential evaluation process, and relying on *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 273 (1994), stated that at step five, only the burden of production shifts to the Commissioner.  *See* 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003).  The burden of persuasion always remains with the individual claiming entitlement to disability benefits.  20 C.F.R. § 416.960(c)(2); *Tidwell,* 161 F.3d at 601.  The Commissioner satisfied the burden of production through the ALJ's proper reliance on the VE's testimony.  Tr. 25; 521-26.  *See also*

---

[3] Plaintiff also indicated he was interested in a cashier position.  When the ALJ asked Ms. Merrill "what kind of job is [Plaintiff] interested in?" at the hearing, Ms. Merrill responded that Plaintiff "talked about cashiering."  Tr. 516.

*Tackett*, 180 F.3d at 1099.  Plaintiff, however, failed to satisfy his burden of persuading the Agency he was entitled to SSI disability benefits.

Ultimately, because Plaintiff has failed to argue this issue with specificity in his briefing, this Court may properly disregard it.  *See Carmickle*, 533 F.3d at 1161 n.2 (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (the Court ordinarily will not consider matters that are not specifically and distinctly argued in the opening brief).

In the alternative, the VE's testimony that Plaintiff could work as a surveillance-system monitor or cashier as long as there was not too much delay in Plaintiff's ability to communicate merely emphasizes the need—already identified by the ALJ—for her to consider this factor in determining whether Plaintiff could perform these jobs.  That is exactly what the ALJ did, as evidenced by her hypothetical and her RFC finding.  Tr. 19, 522.  As discussed in detail above, the ALJ concluded, based on substantial evidence in the record, that although Plaintiff spoke in a halting manner, he nonetheless could communicate effectively.  Tr. 19, 20, 324, 327, 345, 376, 393, 395, 512.  Moreover, the ALJ elaborated in her hypothetical to the VE that Plaintiff's communication was only "*somewhat delayed* by a halting speech pattern," but was ultimately "effective."  Tr. 522 (emphasis added).  Although the ALJ was satisfied with the VE's testimony, if Plaintiff's counsel was dissatisfied with the testimony, counsel had sufficient opportunity to question the VE and obtain "further clarification on the extent of the communication delay" during cross-examination at the hearing.  Pl.'s Br. at 13; Tr. 524-26 (hearing transcript of Plaintiff's counsel questioning the VE).[4]  Thus, the ALJ properly concluded Plaintiff could

---

[4] When a party "has both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable."  *US v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). "The invited error doctrine holds that '[O]ne may not complain on review of errors below for

perform both jobs the VE identified, because her finding that Plaintiff could communicate effectively was supported by substantial evidence.  Tr. 19.

For the foregoing reasons, the ALJ's step five determination is supported by substantial evidence.

## CONCLUSION

The function of this Court on review is not to try this matter de novo, but to leave the findings of fact to the Commissioner and to determine whether the Commissioner's decision is supported by substantial evidence in light of the record as a whole.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).  The ALJ's interpretation of the medical and testimonial evidence, and her step five findings were supported by substantial evidence in the record and free of harmful error.  Therefore, the Commissioner's decision should be affirmed.  *Jamerson*, 112 F.3d at 1067.

---

which he is responsible[.]'"  *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) [unrelated portion amended at 289 F.3d 615] quoting *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1336-37 (9th Cir. 1985).  *See also Johnson v. INS*, 971 F.2d 340, 343-44 (9th Cir. 1992) (applying invited error doctrine in context of review of administrative decision); *St. Anthony Hosp. v. HHS*, 309 F.3d 680, 696 (10th Cir. 2002) (same); *see also, e.g., Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006) (holding that when Plaintiff's attorney agreed to have witness submit affidavit instead of testifying, it was not error for ALJ to discredit witness without re-calling her for live testimony to cross-examine her).

DATED this 1st day of November 2012.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

ADRIAN L. BROWN
Assistant United States Attorney

DAVID MORADO
Regional Chief Counsel, Region X, Seattle

s/ Brett E. Eckelberg
BRETT E. ECKELBERG
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
of Attorneys for Defendant
(206) 615-3748

OF COUNSEL:
Danielle R. Mroczek
Assistant Regional Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Defendant's Brief was filed with the Clerk of the Court on November 1, 2012, using the CM/ECF system, which will send notification of such filing to the following:  <u>Merrill Schneider</u>.

<u>s/ Brett E. Eckelberg</u>
BRETT E. ECKELBERG
Special Assistant U.S. Attorney
Office of the General Counsel